Campbell v. Rusch.

---

## CAMPBELL V. RUSCH.

1. EVIDENCE: CONCLUSIONS: OPINIONS. The conclusions or opinions of a witness, drawn from or based upon the language of a written instru-

ment, are not admissible, when such language has no peculiar meaning which would render it ambiguous, or unintelligible to those unacquainted with such meaning,

2. SAME. The general rule is, that the evidence of the witness must be confined to facts, from which the jury will, under the instructions· of the court, draw conclusions.

3. SAME: EXCEPTIONS. When the matters in controversy partake of the nature of a science or trade, the opinions of experts are admissible in evidence.

4. PROMISSORY NOTE: DEFENSE. An equity arising in favor of the maker and against the payee of a promissory note, after the transfer of the note, cannot be interposed as a defense in an action thereon by the indorsee.

### Appeal from Scott District Court.

### THURSDAY, OCTOBER 20.

ACTION on a promissory note, dated March 5th, 1857, due in seven months, for $200, payable at the banking house of Nickols, Campbell & Co., to the order of N. Corrona, transferred before maturity to plaintiff, and containing these words: "and we also agree that the holder hereof may enforce, delay, or extend the payment of this note at pleasure, in *according to contract*."

On the same day the parties to the note entered into a contract, in substance as follows: Rusch bought of Corrona two hundred bushels of barley, to be delivered in that month, at two dollars per bushel, one-half to be paid for upon the delivery, and the other in the fall, when Rusch delivered his new crop of barley, all of which, he undertook to deliver to Corrona, at Davenport, in good merchantable order, at one dollar per bushel; upon a failure to do which, he was to pay fifty cents for each bushel not thus delivered.

The defendant, in his answer, sets up this agreement, and avers that in the year 1857 he raised two thousand bushels of barley, which he was ready and willing, and offered to deliver to Corrona, but that he refused to take the same, at the time and in the manner provided for in said agreement; that barley was then worth but sixty-five cents per bushel; that plaintiff took the note with notice of this contract, and that

defendant, by the refusal of said Corrona to comply with the contract, has been damaged, &c. Trial and judgment for defendant.

*J. W. Stewart*, for the appellant.

I. The court should have construed the language of the note, and instructed as to the law thereon. Whether there was or was not sufficient on the face of the note to put the purchaser on his inquiry, should not be left for the determination of the jury. 1 Greenl. Ev. section 277 and note 2; 2 Ib. 28*a*; *The State of Georgia* v. *Brailsfield*, 3 Dallas (U. S.) 1; *Etting* v. *The Bank of the United States*, 10 Wheat. (U. S.) 59; *Harris* v. *Sumner*, 2 Pick. 129, 133.

II. The opinions of professional witnesses or experts are not admissible to show the legal effect, construction, or interpretation of a written instrument. 1 Greenl. Ev. section 441, 1 Phill. Ev. 290; *Brothon* v. *Laughman*, 2 Stark. R. 259; *Wogan* v. *Small*, 11 S. & R. 141; *Morehouse* v. *Matthews*, 2 Com. 514; *Giles* v. *O'Toole*, 4 Barb. S. C. 261; 2 Bouv. Inst. 462.

III. The court should have instructed the jury that if at the time the note was transferred no equities existed between the maker and payee, no subsequent equities will effect the rights of the indorsee. *Turnip* v. *Gilchrist*, 1 Sand. S. C. 53; *Graves* v. *Woodbury*, 4 Hill 559; *Mead* v. *Gillett*, 19 Wend. 397; 1 McMullen 258; *Robinson* v. *Lyman*, 10 Conn. 30, and the numerous authorities therein cited; *Stedman* v. *Jillson*, 10 Conn. 55; Story Prom. Notes, sections 178–180, 197 and notes and cases therein cited; *Oldham* v. *Wallace*, 4 Pike 559.

IV. The defendant having failed to show actual notice to the indorsee of the note, of any equities existing at the time of the indorsement, before maturity, it was improper to permit evidence to go to the jury impeaching the consideration. *Robertson* v. *Breedlove*, 7 Porter 541; *Taylor* v. *Mather*, 3 Term R. 83; *Brown* v. *Davis*, 7 Ib. 630; *Burroughs* v.

*Moss,* 10 Barn. & Cres. 558; Chit. on Bills 244; *Baker* v. *Arnold,* 4 Caines 279; *Braman* v. *Hess,* 13 John. 52; *Mullford* v. *Shepard,* 1 Scam. 563; *Carlyle* v. *Wishart,* 11 Ohio 172, and cases there cited; *Himes* v. *Smith,* 4 Shep. 177; *Bond* v. *Lockwood,* Ala. 674; *Linsley* v. *Beal,* 2 Kelley (Georgia) 154; *O'Hara* v. *The Bank of Hawkinsville,* 2 Ala. 367; *McDonald* v. *Husted,* 3 Ib. 297; *Beal* v. *Wainright,* 6 Ib. 156; *Prior* v. *Jacocks,* 1 John. C. 169; *Sanford* v. *Mickels,* 4 John. R. 224; *Johnson* v. *Bridge,* 6 Cow. 693; 10 Barn. & Cres. R. 558; Story on Bills 244; Chit. Bills 220. The consideration of a promissory note indorsed before maturity cannot be inquired into in an action between the *bona fide* holder and maker, unless it is void in its creation. *Baker* v *Arnold,* 3 Caines 279; *Vallet* v. *Parker,* 6 Wend. 615; *Woods* v. *Hynes,* 1 Scam. 103; Byles on Prom. Notes 98, (marginal) and note.

*Leake & Shorey,* for the appellee.

I. In any case in which the indorsee takes the paper under circumstances which might reasonably put the holder upon inquiry, and create suspicions that it was not good, he takes it at his peril, and the maker will be let in to his defense, whether the notes were due or not, at the time of the transfer to the indorsee. Kent. 111, 83. *Hunt* v. *Sandford & Cook,* 6 Yerger 387; *Hall* v. *Hale,* 8 Conn. 336; *Ayer* v. *Hutchinson,* 4 Mass. 370, 372; *Gill* v. *Cubit,* 10 E. C. L. 154; *Down* v. *Halling,* 10 E. C. L. 347; *Egan* v. *Threlfel,* 16 E. C. L. 237; *Cromwell* v. *Winchester,* 1 S. & R. 183.

II. It is a well established principle, that whatever is sufficient to excite attention, and put the party on his guard, and call for inquiry, is notice of everything to which such inquiry might have led. When a party has sufficient information to lead him to a fact, he shall be deemed conversant of it. *Carr* v. *Hilton,* 1 Curtis 393; *The Ploughboy,* 1 Gallis C. C. R. 41; *Stafford* v. *Ballou,* 17 Vermont 320; *Peters* v. *Goodrich,* 3 Conn. 146; *Booth* v. *Barnum,* 9 Conn. 286;

*Green* v. *Slayter,* 4 John. Ch. R. 38; *Sigourney* v. *Munn,* 7 Conn. 333.

III. Whether there has been, in any particular case, reasonable diligence used, is a mixed question of law and fact, to be decided by the jury, acting under the direction of the judge, under the particular circumstances of each case. The judge is to inform the jury, as to the degree of diligence, or care, or skill which the law demands of the party, and what duty it devolves on him, and the jury are to find whether that duty has been done. 1 Greenleaf, section 49, page 67, and cases cited.

IV. The note sued on is in such unusual form, that a careful, prudent business man, would at once be led to inquire as to the meaning of the words "in according to contract" appearing on the face of it, and the question, as to whether the note is in such an unusual form as to put a man on his inquiry, is a question of fact for the jury, or at most a mixed question of law and fact, to be left to the jury under the instruction of the court. *Cromwell* v. *Winchester,* 1 S. & R. 183; *Egan* v. *Threlfal,* 16 Eng. C. L. 237; *Strange* v. *Wigny,* 6 Bingham 677, 4 Moore & Payne 470; *Early* v. *Crockford,* 25 E. C. L, 116; *Snow* v. *Peacock,* 13, E. C. L. 25; *Beckwith* v. *Carrol,* 13 E. C. L. 44; *Bradbury* v. *Falmouth,* 18 Maine 64.

V. On questions of science, skill or trade, or others of like kind, persons of skill, sometimes called experts, may not only testify to facts, but are permitted to give their opinions in evidence. 1 Greenleaf, section 440. If these general principles are true, we think they will decide every point in this case.

WRIGHT, C. J.—Very many questions have been discussed by counsel, in presenting this case, which, from the view we take of it, need not be examined. It will be sufficient to take a short view of the case, and to state briefly the grounds upon which we think it must be reversed.

A question of leading importance on the trial was: what

meaning should be given to the words, "in according to contract," found in the body of the note, so far as they affected the plaintiff with notice of equities between the maker and indorsee. Defendant called a witness and asked him this question: "If this note, or a similar one, were presented to you to discount, or negotiate, would the words, 'in according to contract,' be sufficient to put you on your guard, and induce you to make inquiries as to what they meant, before discounting or negotiating such a note." This question was objected to upon the ground that it was not competent for the witness to give his opinion as to the construction of the note, this being the duty of the court. The objection was overruled, and the witness answered that if he should notice such words in a note, he should inquire what they meant; that they might have reference to the delay, enforcement or extension of said note; but if a stranger presented it, he should want to know what those words meant; he should think they meant something outside of the note. Upon the same subject, another witness was asked this question: "If the note in question was presented to a prudent banker, or business man, for discount, or as a collateral, what would be his conduct?" The interrogatory was objected to as before, and the witness answered, that "being brought on my guard by those written words, I would not take the note on the strength of the signature of the maker; I would inquire what the words "in according to contract," meant." In our opinion, in answering these questions the witnesses were not communicating *facts*, but their own *conclusions* drawn from the language used in the written instrument. This was not permissible. It is the special duty of the jury, under the instructions of the court, to draw conclusions, and for a witness to state facts. The exceptions to the rule are to be found in those cases where a witness speaks of matters of *science, trade*, and a few others of the same character, but they cannot be extended to cases like the present. It is not claimed that the words have a peculiar meaning, rendering the instrument ambiguous, or unintelligible to those not ac-

quainted with such meaning; and that testimony was necessary in order to explain them.   1 Greenl. Ev. section 440–41, and cases there cited; and 1 Smith's Lead. C. 286.   Granting that the testimony shows the note in controversy to have been given for the balance due for the barley sold defendant, as a contract, it is entirely independant of that to deliver barley by the defendant, to Corrona, and of Corrona, to receive the same during the fall of that year.   The answer does not set up the failure, or neglect of Corrona to receive the barley when tendered as a bar to the plaintiff's right to recover the amount claimed ; but conceding the liability on the note, proposes and seeks to offset the damages resulting to defendant from a breach of the contract to receive the barley when tendered.  · And in this view of it, it might as well be a contract to deliver horses, cattle, or corn, as barley. The contract contains no provisions, in the most remote degree, justifying the conclusion that the payment of the note is dependant upon the performance of its provisions on the part of Corrona.   Viewed as an independant contract then, and giving defendant the full benefit claimed for the words "in according to contract," it seems to us that his defense could not be maintained without more, or other circumstances than are at present disclosed.   If there was an equity in favor of defendant, which would effect the note in the hands of a purchaser before maturity, or if any defense arose to him, it arose and accrued subsequent to the time of the transfer.   It would be what may be styled a *subsequent* equity ; one that did not exist against, and was not attached to, the note itself at the time of sale.   Being such, it could not prevail against the plaintiff.   Story on Prom. Notes, section 178, *et seq*. 1 Sand. Sup. C. R. 53.   Section 1740, of the Code, upon the subject of set-off, does not change or interfere with the rule above recognized.   This was a negotiable note.

Upon the question of notice, we think the instructions of the court to the jury were exceedingly clear, and pertinent, and such as to leave the plaintiff but little if any ground of

complaint. Whether the plaintiff had *actual notice* of any contract between defendant and Corrona, they were left to judge from the testimony, but they were distinctly told that the words, "in according to contract," on the note itself, would not impart notice to the plaintiff of the barley contract. So far, therefore, the jury were told just what appellant claims should have been told them, that is to say, the court gave a construction to the instrument instead of leaving that question to the jury. And it was no objection, after this, to leave it to the jury to determine whether these words were so *unusual* as that when taken into connection with all the other facts, attending the transfer of the note, they believed plaintiff took it with notice of the contract. But entertaining the views above expressed, of the relative rights of the parties, even conceding that plaintiff purchased with notice, it is not necessary to pursue this inquiry further. The case must be reversed and remanded for a trial *de novo*.